UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LOMBARD MEDICAL TECHNOLOGIES, INC., <br><br>  Plaintiff, <br><br> v. <br><br> NILS JOHANNESSEN, THOMAS SASSLER AND TRIVASCULAR, INC., <br><br>  Defendants. | Civil Action No. 1:10-cv-10995-NG |

## OPPOSITION OF DEFENDANTS TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

In its motion for a temporary restraining order and a preliminary injunction, plaintiff Lombard Technologies, Inc. omits key facts showing that defendants Nils Johannessen and Thomas Sassler as employees of defendant TriVascular, Inc., pose no threat to any confidential information or goodwill of Lombard. Lombard's account leaves out the following:

- In an FDA clinical trial of a medical device, there are few secrets: the design of Lombard's product; the best techniques for using it; the protocol for and progress of the clinical trial; and the hospitals, physicians and other key personnel involved in the clinical trial -- all of this information is public.

- TriVascular's stent graft and Lombard's are so fundamentally different -- TriVascular's stent graft contains tiny hollow structures and takes shape only after it has been navigated to the desired location in the aorta and injected with special filler, while Lombard's product is made of a woven polyester fabric -- that information about Lombard's product would be useless to TriVascular.

- Lombard's stent graft is targeted at a narrow class of hard-to-treat patients: patients with sharp bends in their aortas. TriVascular is not seeking approval to treat such patients and explicitly excludes them from its clinical study.

- Old friends and colleagues at three different stent-related companies, Johannessen and Sassler emailed their resumes to TriVascular *completely unsolicited* after two

ME1 10158505v.1

- years at Lombard that featured lay-offs, work freezes, cost cutting and postponement of a bonus.

- When TriVascular hired Johannessen and Sassler, it had already committed itself to the product design, protocol and clinical sites for its own FDA clinical trial and could not make changes without FDA approval.

- Johannessen and Sassler sent only a Lombard-approved email to notify business contacts that they were leaving Lombard, with no mention of joining TriVascular.

- As TriVascular made clear in a May 28, 2010 letter that Lombard omits from its papers, for at least six months, neither Johannessen nor Sassler will work with any of the hospitals or physicians they worked with while at Lombard. Nor will they work with any other hospital or physician participating in Lombard's clinical trial.

As these facts, show, neither Johannessen nor Sassler poses any threat to any Lombard confidential information or goodwill. They are merely using their decades of experience helping physicians use stents and other cardiovascular medical devices to work at a company that they believe offers them a better opportunity for professional success.

Lombard's motion also fails because Lombard cannot show that there is personal jurisdiction over the defendants, a California company with no clinical sites in Massachusetts, an individual who lives in Maryland and worked in Massachusetts only sporadically and an individual who lives in Georgia and visited Massachusetts only a handful of times over more than two years of employment at Lombard.

For these reasons, the defendants respectfully request that Lombard's motion be denied.

## FACTS

The facts are set forth in the affidavits of Nils Johannessen, Thomas Sassler, Pamela Mann and Michael Chobotov.

## ARGUMENT

Preliminary injunctive relief is available only as an extraordinary and drastic remedy, not to be imposed unless the movant has, by a clear showing, met its burden of persuasion. *Mazurek*

*v. Armstrong*, 520 U.S. 968, 972 (1997); *Q Div. Records, LLC v. Q Records and QVC, Inc.*, 2000 WL 294875, at *2 (D. Mass. 2000) (a preliminary injunction "constitutes the exercise of a far-reaching power which out not to be indulged in lightly"). The Court should not exercise that power here because Lombard has not demonstrated either likelihood of success on the merits of its claims or the existence of immediate and irreparable harm, and has not shown that the balance of equities or the public interest is in its favor. *See, e.g., Weaver v. Henderson*, 984 F.2d 11, 12, n.3 (1st Cir 1993) (listing requirements for preliminary injunction); *Boston's Children First v. City of Boston*, 62 F. Supp. 2d 247, 257 (D. Mass. 1999) (plaintiff bears the burden of establishing each of the essential elements for a preliminary injunction).[1]

### I. LOMBARD CANNOT PREVAIL ON THE MERITS BECAUSE ENFORCEMENT OF THE NON-COMPETITION AGREEMENTS IS NOT NECESSARY TO PROTECT ANY LEGITIMATE BUSINESS INTERESTS OF LOMBARD.

Massachusetts law does not forbid an employee from using the general skill, memory, and knowledge acquired during the course of employment to compete with the former employer. *New England Overall Co. v. Woltman*, 343 Mass. 69, 75 (1961). "The 'right [of an employee] to use [his] general knowledge, experience, memory and skill' [citations omitted] promotes the public interest in labor mobility and the employee's freedom to practice his profession and in mitigating monopoly." *Dynamics Research Corp. v. Analytic Sciences Corp.*, 9 Mass. App. Ct. 254, 267 (1980).

Employee covenants that restrict competition are enforceable "only to the extent that they are necessary to protect legitimate business interests of the employer." *Marine Contractors Co. v. Hurley*, 365 Mass. 280, 287 (1974). The legitimate business interests that may be protected

---

[1] This Court applies the federal preliminary injunction standard in a diversity case governed by Massachusetts law. *See Lanier Prof'l Services, Inc. v. Ricci*, 192 F.3d 1, 3 (1st Cir. 1999).

are confidential information and good will. *See New England Canteen Service, Inc. v. Ashley*, 372 Mass. 671, 674 (1977).

In this case, enforcement of the non-competition agreements is not necessary to protect Lombard's goodwill. Nor is it necessary to protect any Lombard confidential information.[2]

### A. The Defendants Pose No Threat to Any Good Will of Lombard.

For at least six months, neither Johannessen nor Sassler will work at any of the hospitals where they worked at Lombard. Rather, they will be assigned to hospitals that have already agreed to participate in TriVascular's clinical trial. To avoid even any argument about any possible impact on Lombard, TriVascular will not assign either of them to any hospital that is participating in Lombard's clinical trial.

With the individual defendants' activities so limited, Lombard cannot hope to show any threat to its goodwill. *See Wilson v. Clarke*, 470 F.2d 1218, 1221-22 (1st Cir. 1972).

Indeed, the non-competition agreements Lombard seeks to enforce address only business activity competition within a "Restricted Region," defined as "any location in which the Company operates or into which the Company directs Products and Services." By confining themselves to hospitals that do not use Lombard's stent graft, Johannessen and Sassler not only avoid any possible harm to Lombard's goodwill -- they comply with the letter of the agreement.

### B. The Defendants Pose No Threat to Any Lombard Confidential Information.

At the bottom of Page 10 of its Memorandum of Law in Support of its Motion, Lombard purports to list the trade secrets and confidential information that Johannessen and Sassler are supposedly a threat to use or disclose. Part of the list is boilerplate; the rest is poppycock.

---

[2] Lombard's intentional interference claim against TriVascular is entirely dependent on Johannessen and Sassler having breached enforceable non-competes. *See, e.g., TalentBurst, Inc. v. Collabera, Inc.*, 567 F. Supp. 2d 261, 267 (D. Mass. 2008) (citation omitted).

Lombard claims that "technical information relating to its products and services (including "Aorfix ™)" is confidential information. However, as noted, technical information about Aorfix is public. Similarly, Lombard's "processes and techniques," are described in a 36-page instruction booklet for how Lombard's stent graft should be used.

Lombard also cites "business and marketing plans, pricing and cost data ..." as confidential information to which Johannessen and Sassler had access. In fact, in the U.S., Lombard is not permitted to sell its stent graft; its only permitted activity is the clinical trial. Similarly, Lombard cites "nonpublic clinical trial data and analyses, but it concedes that information about its clinical trials is publicly available on various websites. Although Lombard professes concern that "interim data" and "financial terms" of its clinical trial are confidential, again, Lombard offers no explanation of what kind of information it means by these general terms, why it contends Johannessen and Sassler were privy to it, or why such information is competitively valuable.

Lombard also cites clinical trial design and methodologies, ignoring that the protocol for its clinical trial is posted on the internet. Similarly, "the identity of contacts and key decision makers" at the medical centers involved in Lombard's clinical trial are posted on the web.

Lombard's confidential information argument faces two further problems. First, Lombard ignores the fact that the information it describes is useless to TriVascular. Having already begun and FDA clinical trial of its own radically different product, TriVascular is in no position to adjust its clinical trial design or methodology or its clinical trial agreements with medical centers. Having already reached agreements with all of the medical centers it needs for the full course of its clinical trial, TriVascular has no need of any information regarding the

ME1 10158505v.1

identity or contacts of key decision makers. Targeting a different class of patients, it has no use for any supposed business plans from Lombard.

In addition, Lombard offers no reason at all to suppose that Johannessen or Sassler would disclose any supposedly confidential information about Lombard that they know. On the contrary, Johannessen and Sassler have conducted themselves decently during the resignation from Lombard. Knowing that they intended to go to TriVascular, Lombard even allowed them to continue doing the jobs in which they were supposedly awash in confidential information for a month.

Johannessen and Sassler have promised TriVascular not to use or disclose any information from Lombard or any other former employer and TriVascular has told them that it does not need or want any such information. Lombard's argument that they will inevitably disclose confidential information is unsupported by the facts or the law. *See Safety-Kleen Sys., Inc. v. McGinn*, 233 F. Supp. 2d 121, 124 (D. Mass. 2002) (finding that plaintiff lacked evidence of defendant's disclosure of allegedly confidential information and therefore denying plaintiff's motion for preliminary injunction enforcing non-competition agreement).

Here, it is especially implausible to think that Johannessen or Sassler poses a threat to disclose any supposedly confidential information that Lombard argues they were exposed to, because such information would be useless to any of the defendants. TriVascular's efforts, and those of its employees, are focused on carrying out a successful FDA clinical trial, using the existing product design, and already established group of medical centers and already established protocol for the clinical trial. Given these circumstances, there is no reason to suspect that either of the individual defendants would even be tempted to disclose any supposed confidential information.

Indeed, the theory that the defendants will act improperly towards Lombard is even further weakened by the fact that the two companies are not even true competitors. Even though Lombard intones in its motion papers that its stent graft can be used with both "regular-angle" and "high-angle" patients, it cannot deny that "high-angle" patients are its real market. Its own clinical trial protocol requires that at least 75% of the trial participants be "high-angle" patients. Moreover, in its 2009 Financial Report, the Company forthrightly described its stent graft as "specifically targeted at" the segment of the market consisting of patients with "tortuous anatomy." Given that Lombard's success or failure in treating high-angle patients will have no meaningful impact on TriVascular, the defendants have no possible motive to harm Lombard by disclosing any of its supposed secrets.

## II. LOMBARD CANNOT SHOW IRREPARABLE HARM STEMMING FROM THE EMPLOYMENT RELATIONSHIP BETWEEN THE DEFENDANTS.

Lombard's motion should also be denied because Lombard faces no irreparable harm arising out of the individual defendants employment at TriVascular. Lombard cannot identify any specific way in which it has been harmed or expects to be harmed.

Lombard's only real claim of harm is that it no longer has the services of two experienced and talented employees who played important roles in its clinical trial. But this kind of harm cannot warrant enforcement of a non-competition agreement by means of an injunction. Employees are allowed to resign, whether they have non-competition agreements or not. The harm to Lombard would be the same whether Johannessen and Sassler worked for TriVascular, worked for McDonald's or decided to retire. An injunction preventing them from working at TriVascular would leave Lombard no better off.

By contrast, enjoining Johannessen and Sassler from working would cause them undeniable harm in the form of the loss of the jobs that support the employees and their families. Accordingly, the equities weigh in favor the defendants and Lombard's motion should be denied.

### III    LOMBARD'S MOTION SHOULD BE DENIED BECAUSE IT HAS FAILED TO ESTABLISH PERSONAL JURISDICTION OVER THE DEFENDANTS.

Lombard bears the burden of establishing that the court has personal jurisdiction over each defendant. *See Ticketmaster-New York v. Alioto*, 26 F. 3d 201, 207 (1st Cir. 1994). To establish personal jurisdiction, Lombard must demonstrate sufficient contacts between the defendants and Massachusetts to satisfy both Massachusetts' long-arm statute (Mass. Gen. Laws. ch. 223A, §3) and the due process clause of the Fourteenth Amendment. *Ticketmaster-New York*, 26 F. 3d. at 204.

Personal jurisdiction can be "general" -- *i.e.*, based on "continuous and systematic activity" by the defendants in the forum state -- or "specific" -- based on "a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." *Cruikshank v. Clean Seas Co., 402 F. Supp. 2d 328,* 335 (D. Mass. 2005). Lombard cannot plausibly claim that the defendants contacts with Massachusetts were continuous and systematic as would establish general personal jurisdiction. To establish specific personal jurisdiction, Lombard must show that: (1) the claim underlying the litigation directly relates to or arises out of defendants' contacts with the forum; (2) defendants' contacts with the forum represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) forcing defendants to now appear in Massachusetts is not unreasonable and fundamentally unfair. *Id.* at 335-36.

Lombard cannot establish specific personal jurisdiction either because the claims underlying the litigation -- that Johannessen and Sassler are competing with Lombard in other parts of the country in breach of their non-competition agreements -- are not related to the defendants' minimal contacts with Massachusetts. Sassler never worked at any clinical site in Massachusetts, and only briefly visited the state a handful of times over the two and a half years he worked for Lombard. Johannessen worked only one day a month at sites in Massachusetts, and spent the vast majority of his time outside the commonwealth.

Lombard's boilerplate allegation that TriVascular transacts business in Massachusetts or contracts to supply products and services in Massachusetts is at odds with the facts. TriVascular has no sites in Massachusetts and does not otherwise provide any products or services in Massachusetts.

Lombard's allegation that the defendants caused tortious injury in Massachusetts also fails because all of the conduct Lombard complains about occurred after May 1, 2010, by which date even Lombard had left Massachusetts for Arizona.

Moreover, to force individual defendants who live in Georgia and Maryland to litigate in Massachusetts based on occasional visits and other attenuated contacts would be unfair and unreasonable. Even for TriVascular, being forced to litigate 3,000 miles away in a state in which it has never transacted business would be unfair and burdensome. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995) (listing factors to consider in assessing unfairness argument).

In sum, because Lombard cannot establish that the Court has personal jurisdiction over the defendants, its motion for a temporary restraining order and a preliminary injunction should also be denied.

## CONCLUSION

Johannessen and Sassler are harming no one by their employment with TriVascular. The defendants respectfully request that Lombard's motion for a temporary restraining order and a preliminary injunction be denied.

> Respectfully submitted,
> Defendants Nils Johannessen, Thomas Sassler and TriVascular, Inc.
> By their attorneys,
>
> /s/ Patrick J. Bannon
> Patrick J. Bannon, BBO # 635523
> pbannon@mccarter.com
> Nicholas W. Allen, BBO # 663409
> nallen@mccarter.com
> McCarter & English LLP
> 265 Franklin Street
> Boston, MA 02110
> (617) 449-6500

June 19, 2010